UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TIMOTHY MARCUS MAYBERRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:21-cv-03031-TWP-TAB |
| | ) |
| JACQUELYN GILBERT, | ) |
| BRENDA HINTON, | ) |
| K. GILMORE, | ) |
| FRANK VANIHEL, | ) |
| TAWNI TEMPLETON, | ) |
| I. RANDOLPH, | ) |
| STATE OF INDIANA, | ) |
| I.D.O.C., PRISON COMPLEX, | ) |
| ROBERT E. CARTER, JR., | ) |
| WELLINGTON, | ) |
| | ) |
| Defendants. | ) |

**ORDER SCREENING AMENDED COMPLAINT AND
DIRECTING ENTRY OF FINAL JUDGMENT**

This matter is before the Court for screening of the Amended Complaint (Dkt. 20). Plaintiff Timothy Marcus Mayberry ("Mr. Mayberry") is a prisoner currently incarcerated at Miami Correctional Facility ("Miami"). He filed a civil action on December 14, 2021, and the complaint was dismissed pursuant to 28 U.S.C. § 1915A. (Dkt. 14.) Mr. Mayberry was then given the opportunity to file an amended complaint. His Amended Complaint names seven defendants: (1) Jacquelyn Gilbert, (2) Brenda Hinton, (3) K. Gilmore, (4) I. Randolph, (5) Frank Vanihel, (6) Tawni Templeton, and (7) Robert Carter Jr., in their personal and official capacities.[1] The first six named defendants were all employed at Wabash Valley Correctional Facility ("Wabash

---

[1] The **Clerk is directed** to update the docket to reflect that State of Indiana, IDOC Prison Complex and Wellington are no longer defendants in this action because they were not named in the Amended Complaint. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017) ("For pleading purposes, once an amended complaint is filed, the original complaint drops out of the picture.").

Valley"), while Robert Carter, Jr., is the Commissioner of the Indiana Department of Correction. Because Mr. Mayberry is a "prisoner," this Court has an obligation to screen the Amended Complaint before service on the defendants. 28 U.S.C. § 1915A(a), (c). For the reasons explained below, this action is **dismissed** because the Amended Complaint fails to state a federal claim upon which relief may be granted and the Court lacks jurisdiction over the state law claims.

## I. SCREENING STANDARD

When screening a complaint, the court must dismiss any portion that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To determine whether the complaint states a claim, the court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020). Under that standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court construes *pro se* complaints liberally and holds them to a "less stringent standard than formal pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

## II. THE AMENDED COMPLAINT

The Amended Complaint is fourteen pages. Eighteen pages of exhibits are attached. These exhibits were considered by the Court at screening. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (the court may consider "documents that are attached to the complaint, documents that are central to the complaint and referred to in it.").

The Amended Complaint alleges both federal and state law claims.

A.   **Retaliation Claims based on Law Library Services**

The federal claim is based on a prisoner's right to be free from retaliation for engaging in protected First Amendment activity. The Amended Complaint states that Mr. Mayberry filed complaints, grievances, and a notice of tort claim against defendant Jacquelyn Gilbert ("Ms. Gilbert"), and in response she retaliated against him by refusing to provide him with legal services and aggressively demeaned, intimidated and threatened him. (Dkt. 20 at p. 4, ¶ 2.) Ms. Gilbert's retaliation allegedly began in August 2021 and ended when Mr. Mayberry was transferred to the Miami Correctional Facility in October 2021. *Id.* The grievance documents and notice of tort claim provide the factual context for these allegations. The grievance documents attached to the Amended Complaint set forth four specific instances of denial of legal services and intimidation. The notice of tort claim provides additional factual context. (Dkt. 20-1 at p. 19-24.)

   1.   **Grievance No. 131546**

Mr. Mayberry states that on August 6, 2021, he requested a copy of a Notice from the St. Joseph County Clerk. Ms. Gilbert declined to copy the document because it was in regards to a dismissed matter. (Dkt. 20-1 at p. 10.) In response to this grievance, Education Supervisor B. Hinton states that

> [t]he library doesn't copy random documents. If an offender has documents that he is using as exhibits, those exhibits should be attached to the petition as it will be presented to the court. If an offender is using exhibits in his pleadings to the court, he should compile the documents and sent them all at once, not piecemeal.

(Dkt. 20-1 at p. 13.) The grievance specialist explained, "Please make sure that you have all documentation together when sending them to the library for copies, otherwise, they will be returned to you uncopied." (Dkt. 20-1 at p. 18.) Mr. Mayberry filed a grievance appeal stating that the documents were not random, and a proper investigation into the grievance was not

3

conducted. *Id.* at p. 15. In response to this grievance appeal, the facility explained that the "grievance appeal and all related documents have been reviewed. . . . Free legal copies are only for active cases, evidently didn't provide sufficient proof to prove otherwise." (Dkt. 20-1 at p. 17.)

On August 12, 2021, Ms. Hinton was able to verify that Mr. Mayberry was required to submit three copies of the Notice to the clerk's office and requested that Mr. Mayberry resend the document for copying on his next visit to the library. (Dkt. 20-1 at p. 21.) On August 18, 2021, Mr. Mayberry returned to the law library and presented the document for copying to Ms. Gilbert. Ms. Gilbert provided the requested copies. *Id*. In doing so she "slammed the copies … near [Mr. Mayberry] and stood over [him] with a sadistic expression . . . she waved her finger at [him]." (Dkt. 20-1 at p. 21.)

    2.    <u>**Grievance No. 132219**</u>

On September 1, 2021, Mr. Mayberry requested a print-out and copies of a motion for the appointment of counsel associated with case number 3:21-cv-506-JD-MGG in the Northern District of Indiana. (Dkt. 20-1 at p. 22.) Ms. Gilbert refused to provide the copies, and Mr. Mayberry filed another grievance in which he alleged that Ms. Gilbert refused to make copies and print several documents because they were "not legal enough." (Dkt. 20-1 at p. 26.) Mr. Mayberry was told that if he wanted copies, he would have to hand write them. *Id.*; Dkt. 20-1 at p. 22. He further complained that if he wanted copies, he would have to fabricate motions to the court. *Id.* In addition, Ms. Gilbert was reading his legal work to make sure it was legal mail. (Dkt. 20-1 at p. 26.)

The grievance specialist responded, "when you request copies, they need to be presented in a proper order (with the motion they are attached to). The law library will not just copy random

items for you." (Dkt. 20-1 at p. 27.)[2]  Mr. Mayberry appealed stating in relevant part that he sent his documents to Ms. Hinton and they were copied and returned without incident.  (Dkt. 20-1 at p. 29.)

3.      **Grievance No. 132501**

On September 8, 2021, Mr. Mayberry filed another grievance stating that he made a request for copies and Ms. Gilbert refused to print them at that time because Mr. Mayberry was scheduled to return to the law library in the afternoon.  (Dkt. 20-1 at p. 33.)  Mr. Mayberry objected because the law library has a policy dictating that if requests for copies and print outs are made at least 30 minutes before the session expires, the prisoner will receive the copies before the end of the session.  While Mr. Mayberry sat at a computer terminal and Ms. Gilbert was nine feet away in her office, Mr. Mayberry told Ms. Gilbert that she was denying him access and she began to scream at him.  Mr. Mayberry told her he would not continue the conversation while she was screaming and in response Ms. Gilbert told him to "get the f**k in here now." (Dkt. 20-1 at p. 33.)  Mr. Mayberry felt threatened and did not go in her office.  He did not receive copies or printouts before the end of the session.  *Id.*; *see also* Dkt. 20-1 at p. 23.

In response to this grievance, Ms. Gilbert explained:

> This was a busy morning, and I didn't get everything done.  I told him he could get his copies when he came back.  He didn't like that answer.  I told him I tried to print, but his homefile was open and he said, it wasn't so I told him to come and look at my screen. I did not tell him to get the F@#k in here.

(Dkt. 20-1 at p. 34.)   Education Supervisor B. Hinton's response was as follows:

---

[2] In response to this grievance, Education Supervisor B. Hinton stated,

> See attachments 12 documents, which include letters to Warden Vanihel, the latest dated 9/1/2021, the same date this grievance was written. I believe I addressed these issues in my attached memorandum to Offender Mayberry that was sent to him on 9/8/2021. I stand by my statements in the memorandum on these issues.

Dkt. 20-1 at p. 27.  The referenced memorandum was not attached to the Amended Complaint.

> I will have to stand by [Ms. Gilbert's] statement as I believe it would be out of character for Ms. Gilbert to speak to anyone in the way Mayberry claims. See attached library record of the document that Mayberry refers to. It was printed for Mayberry on the day he was in the library. Due to time constraints, instead of handing the document to Mayberry during the morning session of library, Ms. Gilbert printed it and the document was given to him when he returned to the library the same afternoon.

*Id.* The grievance specialist stated, "[y]ou need to realize that technology is not perfect and sometimes causes a delay in printing. You could learn to be a little patient. You have received your copies. As far as what Ms. Gilbert 'allegedly' said to you. I have nothing to substantiate that claim." (Dkt. 20-1 at p. 34.)

Mr. Mayberry appealed, stating that he provided the grievance specialist with an extensive list of names of witnesses to substantiate his claim and complaining that his grievance was not properly considered. *Id.* at p. 35.

### 4. October 6, 2021, Returned Grievance

Mr. Mayberry filed a grievance on October 6, 2021, stating that he timely submitted a copy request, but Ms. Gilbert did not provide the copies. He alleged that her delays are becoming more frequent. He states that his afternoon attendance at the law library is being used to justify not providing copies in the morning because he is returning later that day. As a result, he cannot review morning documents and mail them out that same day. (Dkt. 20-1 at p. 37.) This grievance was returned to Mr. Mayberry unfiled and without assigning a grievance number. (Dkt. 20-1 at p. 38.)

  **B.**  **Retaliatory Transfer Claim**

Mr. Mayberry alleges that on October 14, 2021, defendants Robert Carter, Jr. ("Mr. Carter") and Frank Vanihel ("Warden Vanihel") retaliated against him for filing complaints, grievances and a notice of tort claim by transferring him to a different facility. (Dkt. 20 at ¶ 13.) During his transfer, legal papers and personal property went missing or were destroyed. *Id.* at ¶ 14.

  **C.**  **Access to Court Claim**

Warden Vanihel, Ms. Gilbert, and Ms. Hinton have allegedly denied Mr. Mayberry "digital legal files in their possession that [he] requires to prosecute Cause No. 3:19-cv-00556-PPS-MGG." (Dkt. 20 at ¶ 15.)

  **D.**  **State Law Claims**

The Amended Complaint also alleges state law claims. (Dkt. 20 at ¶ 6.) Specifically, Mr. Mayberry claims that Ms. Gilbert refused to return legal documents to him in violation of Indiana Code and tort law. *Id.* at ¶ 7; Dkt. 20-1 at p. 21 (alleging, "I was even afraid to ask Gilbert about my filing from August 6, 2021, that I never received back from her."). He alleges that as a result of this taking he suffered unidentified compensable injuries. (Dkt. 20 at ¶ 9.) In addition, the other named defendants are allegedly liable for these injuries under the doctrine of *respondeat superior*. *Id.* at ¶ 10. He states that Ms. Hinton, Templeton, Gilmore, Randolph, Warden Vanihel, and Mr. Carter are liable because they were provided with notice of Ms. Gilbert's repeated infringements on his constitutionally secured rights and the breach of her statutory and policy mandated duties. (Dkt. 20 at p. 6-8.)

Mr. Mayberry seeks money damages in the amount of 1.5 million dollars.

### III.   DISCUSSION OF CLAIMS

Applying the screening standard to the factual allegations in the Amended Complaint, certain claims are dismissed while other claims shall proceed as submitted.

**A.   Federal Claims**

   **1.   Retaliation Claim against Ms. Gilbert**

Mr. Mayberry contends that Ms. Gilbert retaliated against him because he engaged in protected First Amendment activity. To state a First Amendment retaliation claim, Mr. Mayberry must allege that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity; and (3) the protected activity he engaged in was at least a motivating factor for the retaliatory action. *Archer v. Chisholm*, 870 F.3d 603, 618 (7th Cir. 2017) (*citing Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The Amended Complaint alleges that Mr. Mayberry engaged in protected activities when he filed complaints, grievances, and a notice of tort claim against Ms. Gilbert. However, the Amended Complaint fails to allege that Ms. Gilbert subjected him to a deprivation that would likely deter First Amendment activities. The specific instances of delays in receiving copies set forth in the Amended Complaint and the attached grievances were reasonable. In addition, there is no basis to conclude that the protected activity was a motivating factor in Ms. Gilbert's failure to provide Mr. Mayberry all the copies he requested when he requested them. Instead, the Amended Complaint and attachments reflect that Ms. Gilbert did provide many copies the same day they were requested (but not the same morning), and that copies were denied when they did not appear to be connected to a motion. These circumstances are not sufficient to state a claim of retaliation.

Further, the Amended Complaint alleges in a conclusory fashion that Ms. Gilbert aggressively demeaned, intimidated and threatened him. (Dkt. 20 at p. 4, ¶ 2.) The factual allegations in support of these conclusions, however, do not reflect that Mr. Mayberry suffered a deprivation that would likely deter First Amendment activity. Specifically, the two most egregious allegations are the following. First, Ms. Gilbert "slammed [requested] copies … near [Mr. Mayberry] and stood over [him] with a sadistic expression . . . she waved her finger at [him]." (Dkt. 20-1 at p. 21.) Second, Ms. Gilbert used the f-word when directing him to come into her office. (Dkt. 20-1 at p. 33.) "[F]or retaliation for filing petitions to be actionable, the means of retaliation must be sufficiently clear and emphatic to deter a person of 'ordinary firmness' from submitting such petitions in the future." *Hughes v. Scott*, 816 F.3d 955, 956 (7th Cir. 2016). These alleged acts of harassment and intimidation are not professional, but they are not sufficiently adverse or connected to the protected activity to state a retaliation claim.

Mr. Mayberry has effectively pled himself out of court by alleging facts (through his attached grievances and tort claim) that undermine the validity of his claim. *See Doyle v. Pasquino,* 207 F. App'x 713, 714 (7th Cir. 2006) (concluding that "being subjected to a prison guard with a 'super tough guy face'" does not state a retaliation claim) (citing *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir.1999); *Thomson v. Washington*, 362 F.3d 969, 970 (7th Cir. 2004)).

The claim that Ms. Gilbert retaliated against Mr. Mayberry for filing grievances and a notice of tort claim fails to state a claim upon which relief may be granted and is therefore **dismissed**. Given the dismissal of these claims against Ms. Gilbert, the claims against defendants Hinton, Templeton, Gilmore, Randolph, Vanihel, and Carter for allegedly failing to intervene to stop Ms. Gilbert are also **dismissed**. *See* Dkt. 20 at p. 8-9.

9

### 2. Retaliatory Transfer Claim

Second, the retaliatory transfer claim must be dismissed. Mr. Mayberry alleges that on October 14, 2021, Mr. Carter and Warden Vanihel transferred Mr. Mayberry to Miami Correctional Facility after he filed a grievance complaining about the conditions of his confinement and treatment. (Dkt. 20 at p. 20, ¶ 13.) These facts are insufficient to state a plausible claim for relief. This is because "[a] transfer alone is not adverse enough to deter an ordinary inmate from protected speech." *Long v. Matz*, No. 22-1809, 2022 WL 17038957, at *2 (7th Cir. Nov. 17, 2022) (citing *Holleman v. Zatecky*, 951 F.3d 873, 881 (7th Cir. 2020)). And Mr. Mayberry did not allege that Miami was materially worse than Wabash Valley. In fact, Mr. Mayberry's allegation is that he was transferred to a new prison after complaining about the conditions at Wabash Valley.

### 3. Loss of Papers

Third, Mr. Mayberry alleges that his personal property including legal papers went missing or were destroyed when he was transferred to Miami. (Dkt. 20 at p. 20, ¶ 14; *see also* Dkts. 20-1 at p. 5-8 (affidavits from other prisoners testifying that their property was transferred to Miami without incident).) These allegations fail to state a claim upon which relief may be granted because there is no factual allegation that any named defendant was personally responsible for transferring Mr. Mayberry's property from Wabash Valley to Miami. A defendant can only be liable for the actions or omissions in which he personally participated. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017); *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015).

### 4. Denial of Digital Legal Files

Fourth, Mr. Mayberry alleges that Warden Vanihel, Ms. Gilbert and Ms. Hinton are continuing to retaliate against him by denying him copies of digital legal files needed to prosecute Cause Number 3:19-cv-00556-PPS-MGG. (Dkt. 20 at ¶ 15.) As a result, that case has been stayed. *Id.* at ¶ 18. Mr. Mayberry concludes that he has been denied the ability to prosecute this case. *Id.* at ¶ 19.

This claim must be dismissed because Mr. Mayberry could have sought the digital files in the possession of defendants through discovery and, if necessary, by filing a motion to compel in *Mayberry v. Olmstead,* 3:19-cv-00556-PPS-MGG (N.D. Ind). In addition, the Northern District case referenced by Mr. Mayberry has now been resolved on the merits and final judgment was entered on September 20, 2022. *McCree v. Grissom*, 657 F.3d 623, 624 (7th Cir. 2011) (stating that a court may take judicial notice of its records). Based on these facts, any retaliation claim or access to courts claim is **dismissed.**

### B. State Law Claims

Mr. Mayberry's state law claims are purportedly brought pursuant to this Court's diversity jurisdiction.

### 1. Diversity Jurisdiction

Federal courts are courts of limited jurisdiction. *Hart v. FedEx Ground Package System Inc.*, 457 F.3d 675, 679 (7th Cir. 2006). For a federal court to hear a case with only state law claims, diversity jurisdiction under 28 U.S.C. § 1332 must be present. However, the Amended Complaint does not plausibly allege diversity jurisdiction, and the Court has an independent duty to ensure that subject matter jurisdiction exists in every case. *See Page v. Democratic Nat'l Comm.*, 2 F.4th 630, 634 (7th Cir. 2021) ("[F]ederal courts, as courts of limited jurisdiction, must make

their own inquiry to ensure that all statutory requirements are met before exercising jurisdiction."). "In order to support diversity jurisdiction under 28 U.S.C. § 1332, two basic requirements must be satisfied: (1) complete diversity of citizenship between the plaintiffs and the defendants and (2) the proper amount in controversy (more than $75,000)." *Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 881 (7th Cir. 2001).

Mr. Mayberry presents a declaration and exhibits supporting his claim that he is a resident of Illinois.  (Dkt. 20 at p. 13; *see also* Dkts. 20-1 at p. 1-4.)  The Northern District of Indiana has considered similar information and concluded that Mr. Mayberry has not definitively established that by the time he was arrested he had changed his domicile from Indiana to Illinois.  *See Mayberry v. Lenyo*, No. 3:21-CV-903-JD-MGG, 2022 WL 2116657, at *2 (N.D. Ind. June 13, 2022); *Mayberry v. Keller*, No. 3:21-CV-506-JD-MGG, 2021 WL 4224121, at *1 (N.D. Ind. Sept. 16, 2021).

However, in this case, the issue of Mr. Mayberry's citizenship may be bypassed because the amount in controversy is grossly misstated.  Mr. Mayberry seeks 1.5 million dollars.  (Dkt. 20 at 11.)  Federal courts usually accept the allegations of damages in a plaintiff's complaint "unless it appears 'to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Smith v. Am. Gen. Life and Acc. Ins. Co., Inc.*, 337 F.3d 888, 892 (7th Cir. 2003) (quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)); *Webb v. Fin. Indus. Regul. Auth., Inc.*, 889 F.3d 853, 856 (7th Cir. 2018) ("Jurisdiction turns on what is at stake between the parties to this suit.").

The court first decides whether, assuming the facts the plaintiff alleges are true, state law allows recovery of the damages the plaintiff seeks.  *Webb v. Fin. Indus. Regul. Auth., Inc.*, 889 F.3d 853, 859 (7th Cir. 2018).  If state law forecloses recovery of the damages, it is certain that the

claim is for less than the jurisdictional amount. *Id.* Otherwise, the court accepts the plaintiff's good faith valuation of the claim. *See Anthony v. Sec. Pac. Fin. Servs., Inc.*, 75 F.3d 311, 315 (7th Cir. 1996) (applying this two-step inquiry); *see also St. Paul Mercury Indem. Co.*, 303 U.S. at 288 ("The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls."); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006) ("[U]ncertainty about whether the plaintiff can prove its substantive claim, and whether damages (if the plaintiff prevails on the merits) will exceed the threshold, does not justify dismissal.").

### 2. Amount in Controversy

#### a. Negligence Claims

Mr. Mayberry's state tort claim is understood to be based on negligence. Under this theory of liability, Ms. Gilbert refused to return unidentified legal documents and, as a result, Mr. Mayberry suffered unidentified compensable injuries. (Dkt. 20-1 at 4-5.) "Negligence claims have three elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, and (3) injury to the plaintiff proximately caused by the defendant's breach." *Albanese Confectionery Grp., Inc. v. Cwik*, 165 N.E.3d 139, 146–47 (Ind. Ct. App. 2021) (*citing Hayden v. Franciscan All., Inc.*, 131 N.E.3d 685, 693 (Ind. Ct. App. 2019); *Scott v. Retz*, 916 N.E.2d 252, 257 (Ind. Ct. App. 2009)), *trans. denied*.

As a preliminary matter, the Court has not identified a legally cognizable duty owed by any of the defendants to Mr. Mayberry. Mr. Mayberry cites to three provisions in Title 11 of the Indiana Code. *See* Dkt. 20 at ¶¶ 6 – 8 (citing §§ 11-11-1-2(4), 11-11-7-1, 11-11-2-4, 35-43-4-2). First, Indiana Code § 11-11-1-2(4) states, "The department may not undertake any act or practice that would discipline a person for, or otherwise discourage or limit him from, utilizing the

grievance procedure." Second, Indiana Code § 11-11-7-1 states: "The department shall afford a confined person reasonable access to legal materials to enable him to research legal matters and prepare and file legal documents." Third, Indiana Code § 11-11-2-4 provides in relevant part that when the department seizes property, the affected person shall be given written notice of the seizure.

Even if these statutes were violated, however, Title 11 does not provide Mr. Mayberry with a private cause of action against the defendants. In other words, these provisions do not create an enforceable duty. Mr. Mayberry does not have private right of action to enforce Title 11, Article 11 of the Indiana Code. *Wheeler v. Branchville Corr. Facility Off.*, 176 N.E.3d 587 (Ind. Ct. App. 2021) ("statutes under Title 11 do not provide an offender with a private cause of action.") (citing *Blanck v. Ind. Dep't of Corr.*, 829 N.E.2d 505, 509 (Ind. 2005) (finding that the legislature did not intend for the disciplinary statutes under Title 11 to provide offenders with a private cause of action); *Kimrey v. Donahue*, 861 N.E.2d 379, 382 (Ind. Ct. App. 2007) (finding that *Blanck* was not limited to only prison discipline matters and that DOC inmate did not have private right of action under Ind. Code § 11-11-3-6 stating that "a confined person may acquire and possess printed matter on any subject"), *trans. denied*; *Medley v. Lemmon*, 994 N.E.2d 1177, 1185 (Ind. Ct. App. 2013) (no private right of action under Ind. Code § 11-11-3-9, concerning restrictions on visitation), *trans. denied*.). *See also Kimrey v. Donahue,* 861 N.E.2d 379, 381 (Ind. Ct. App. 2007) (finding no private cause of action to enforce the rights conferred by Ind. Code § 11-11-3-6). Thus, Mr. Mayberry is not eligible for any money damages based on the alleged breach of these statutes.

      b.     **Criminal Code Violation**

Mr. Mayberry also asserts a claim under Indiana Code § 35-43-4-2. This statute is part of Indiana's criminal code. This statute "imposes liability on individuals who knowingly or

14

intentionally exert unauthorized control over another's property with the intent to deprive the other person of any part of its value or use." *Greenbank v. Great Am. Assurance Co.*, 47 F.4th 618, 629 (7th Cir. 2022).

Indiana law provides a private cause of action to pursue damages arising under this statue. Specifically, Indiana Code Section 34-24-3-1 provides, in relevant part:

> If a person . . . suffers a **pecuniary loss** as a result of a violation of **IC 35-43**, . . . the person may bring a civil action against the person who caused the loss for the following:
>
> > (1) An amount not to exceed three (3) times:
> >
> > > (A) the actual damages of the person suffering the loss, in the case of a liability that is not covered by IC 24-4.6-5; . . .
> >
> > (2) The costs of the action.
> >
> > (3) A reasonable attorney's fee.

Claims under Indiana Code Section 34-24-3-1 require the establishment of a "pecuniary loss". The Oxford English Dictionary defines "pecuniary" as "consisting of money; exacted in money." *See United States v. Johnson*, 47 F.4th 535, 543 (7th Cir. 2022) ("To determine the plain meaning of a term, courts frequently look to dictionary definitions . . . ."). Thus, a pecuniary loss is a monetary loss Mr. Mayberry suffered as a result of the loss of the documents. It is the value of the document itself that is at issue. *See Albanese Confectionery Grp., Inc. v. Cwik*, 165 N.E.3d 139, 147 (Ind. Ct. App. 2021) (acknowledging that allegedly missing files have no monetary value, and are of no value of any kind to anyone other than to alleged victim). The specific documents that have allegedly not been returned have not been identified, but there is no plausible basis to conclude that the documents that were not returned have an independent pecuniary value of more than the cost of the paper itself – far less than $75,000.00.

      **c.**      **Punitive Damages**

The Amended Complaint also seeks punitive damages in the amount of Five Hundred Thousand Dollars. (Dkt. 20 at p. 11.) As to punitive damages, "punitive damages may sometimes be taken into account in deciding whether the proper amount is in controversy." *Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 978 (7th Cir. 2000). As the Seventh Circuit has explained:

> Where punitive damages are required to satisfy the jurisdictional amount in a diversity case, a two-part inquiry is necessary. The first question is whether punitive damages are recoverable as a matter of state law. If the answer is yes, the court has subject matter jurisdiction unless it is clear "beyond a legal certainty that the plaintiff would under no circumstances be entitled to recover the jurisdictional amount."

*Cadek v. Great Lakes Dragaway, Inc.*, 58 F.3d 1209, 1211–12 (7th Cir.1995), *quoting Risse v. Woodard*, 491 F.2d 1170, 1173 (7th Cir.1974). Indiana law limits punitive damages. Ind. Code § 34–51–3–4 provides: "A punitive damage award may not be more than the greater of: (1) three (3) times the amount of compensatory damages awarded in the action; or (2) fifty thousand dollars ($50,000)." Any claim for punitive damages alleged by Mr. Mayberry cannot exceed $50,000.00 because possible compensatory damage awards are limited to the value of the lost documents, which, as noted above, is *de minimus*. Three times that amount is negligible. *McCready v. Harrison*, No. 1:05-CV-1359-DFH-WTL, 2009 WL 62260, at *2 (S.D. Ind. Jan. 8, 2009) (C.J. Hamilton) (finding amount in controversy not met in case where motorcycle was taken to a repair shop and not returned).

Mr. Mayberry's state law claims based on the failure to return the papers he submitted for copying do not meet the amount in controversy requirement for federal jurisdiction. It is clear beyond a legal certainty that Mr. Mayberry would under no circumstances be entitled to recover the jurisdictional amount. Accordingly, the state law claims are **dismissed** for lack of jurisdiction.

**IV.  CONCLUSION**

Mr. Mayberry's federal claims are **DISMISSED** for failure to state a claim upon which relief may be granted. The state law claims are **DISMISSED** for lack of jurisdiction.

Judgment consistent with this Order shall now issue.

**SO ORDERED.**

Date: 1/3/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Timothy Marcus Mayberry, #170022
MIAMI CORRECTIONAL FACILITY
3038 West 850 South
Bunker Hill, Indiana  46914-9810
Electronic Service Participant – Court Only